IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Deborah J. Ashmore,<br><br>      Plaintiff,<br><br>v.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>      Defendant. | C/A No. 0:11-2865-TMC-PJG<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

  This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Deborah J. Ashmore brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**ADMINISTRATIVE PROCEEDINGS**

  In March 2006, Ashmore applied for DIB and SSI, alleging disability beginning September 13, 2003. (Tr. 150-58.) Ashmore's applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 30, 2008, at which Ashmore, who was represented by Stuart G. Anderson, Jr., Esquire, appeared and testified. The ALJ, after hearing testimony from a vocational expert, issued a decision on March 24, 2009 denying benefits and concluding that Ashmore was not disabled. (Tr. 19-32.)

Ashmore was born in 1957 and was forty-six years old at the time of her alleged disability onset date. (Tr. 170.) She has a limited education and past relevant work experience as a forklift operator and order puller. (Tr. 188, 193.) Ashmore alleged disability since September 13, 2003 due to golfer's elbow in both arms. (Tr. 187.)

The ALJ found as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since September 13, 2003, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

     \* \* \*

3. The claimant has the following severe impairments: episodic asthmatic bronchitis, fibromyalgia (diagnosed in 2006), history of bilateral elbow epicondylitis, trochanteric bursitis of the left shoulder, and osteoarthritis of the hands with diminished sensation in the left 4th and 5th fingers.

     \* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

     \* \* \*

5. . . . [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). I specifically find that she can lift or carry 20 pounds occasionally and 10 pounds frequently, and she can sit, stand, or walk for six hours, each, of an eight hour work day, but she needs to be able to sit or stand at will. I also find that she can occasionally climb a ladder, rope, or scaffold and occasionally reach with the left upper extremity. I further find that she can frequently (i.e., not constantly) climb a ramp or stairs, as well as balance, stoop, kneel, crouch, crawl, and feel with the hands. I also find that she needs to avoid concentrated exposure to fumes.

     \* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

     \* \* \*

7. The claimant was born on [REDACTED], 1957 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset



      date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 13, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-31.) Ashmore submitted additional evidence to the Appeals Council, which denied her request for review on September 19, 2011, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>see</u> <u>also</u> <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:



    (1)       whether the claimant is engaged in substantial gainful activity;

    (2)       whether the claimant has a "severe" impairment;

    (3)       whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

    (4)       whether the claimant can perform her past relevant work; and

    (5)       whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Ashmore raises the following issues for this judicial review:

I.  The ALJ[] erred in the evaluation of fibromyalgia and [the claimant's] chronic pain.

II. The ALJ erred by failing to give appropriate weight to the opinions of Dr. Deborah Meadows, Mrs. Ashmore's treating rheumatologist, and adequate weight to the opinion of Chris Weddington, NP.

III. The ALJ erred in failing to consider whether Mrs. Ashmore was disabled at a later onset date.

(Pl.'s Br., ECF No. 15.)



# DISCUSSION

## A. Treating Sources

Ashmore argues that the ALJ failed to properly consider the opinion of Ashmore's treating rheumatologist, Dr. Deborah Meadows. Ashmore further argues that the ALJ failed to give adequate weight to the opinions of nurse practitioner Chris Weddington and Dr. Jack C. Durham, Ashmore's long-term treating sources.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).



      **1.     Dr. Deborah Meadows**

The record shows that Ashmore was first seen and evaluated by Dr. Meadows for complaints of diffuse pain on October 1, 2007, with two follow-up visits on November 1, 2007 and December 26, 2007.  (Tr. 732-42.)  Following these visits, on January 7, 2008, Dr. Meadows completed a residual functional capacity questionnaire opining that Ashmore, due to fibromyalgia, chronic low back pain, probable carpal tunnel syndrome, and osteoarthritis of the hands, could sit for two hours in an eight-hour workday; stand/walk for two hours in an eight-hour workday; occasionally lift or carry less than ten pounds and rarely lift or carry ten pounds; rarely crouch/squat, climb ladders, and climb stairs; and never twist or stoop. (Tr. 727-31.) Dr. Meadows further noted that Ashmore's pain was a 10/10 in severity and was constant; that Ashmore's prognosis was poor; and that she could be expected to be absent from work for more than four days per month.  (Id.)

The ALJ found that Dr. Meadow's assessment was largely based on Ashmore's subjective complaints and was not consistent with the objective medical evidence in the record.  The ALJ concluded that Dr. Meadow's assessment was "extreme" and was contradicted by her own treatment notes, as well as the notes from Dr. Philip H. Wessinger, another treating physician.  Specifically, Dr. Meadows's treatment notes indicated that Ashmore had a negative rheumatoid factor and negative ANA, x-rays of Ashmore's pelvis were normal, and an x-ray of Ashmore's right hand showed only early osteoarthritis at the DIP joints with no other abnormalities. (Tr. 23, 732-41.) The ALJ also noted, for example, that other medical evidence in the record showed Ashmore had good range of motion and strength, no gross motor or sensory deficits, normal gait, normal coordination, that Ashmore's fibromyalgia was "fairly well controlled" with medication, and that Ashmore had "questionable osteoarthritis," and was in no acute distress.  (Tr. 28-29, 636, 345, 948, 950.)



Ashmore argues that the ALJ erred by failing to properly evaluate Ashmore's symptoms, limitations, and pain related to fibromyalgia. She further argues that the ALJ erred by not giving Dr. Meadows's opinion greater weight because Dr. Meadows is a specialist in rheumatology—the field that most often diagnoses and treats patients with fibromyalgia. In support of her argument, Ashmore provides a detailed history of the etiology of fibromyalgia and points to Dr. Meadows's examination on October 1, 2007 which revealed multiple tender points and which Dr. Meadows stated "was certainly compatible with fibromyalgia syndrome" (Tr. 732-34), as well as Dr. Meadows's December 26, 2007 opinion that "fibromyalgia [was an] increasing problem." (Tr. 735-36.)

The court observes that the ALJ found Ashmore's fibromyalgia to be a severe impairment, that he acknowledged and accepted Ashmore's fibromyalgia diagnosis, and that, as a result, he imposed limitations in his residual functional capacity assessment to account for the fibromyalgia symptoms he found supported by the record. Upon review of the parties' arguments, the medical evidence, and the ALJ's decision, the court finds that Ashmore has failed to demonstrate that the ALJ's decision with regard to Dr. Meadows is unsupported by substantial evidence or controlled by an error of law. Although Ashmore may point to selective evidence in the medical record that may arguably support Dr. Meadows's opinion, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (stating that a treating physician's opinion is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record"); Craig, 76 F.3d at 589 (stating that the court may not "undertake to



re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Accordingly, the court finds that Ashmore has failed to demonstrate that the ALJ's decision with regard to Dr. Meadows's opinion is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

### 2. Nurse Practitioner Weddington and Dr. Jack Durham

Ashmore argues that the ALJ failed to give adequate weight to the opinion of Dr. Jack Durham, Ashmore's long-term treating physician, and Dr. Durham's nurse practitioner, Chris Weddington. The applicable law in weighing the opinions of treating physicians differs from the applicable law in weighing opinions from other sources. The Social Security regulations further distinguish between opinions from "acceptable medical sources" and "other sources."[2] See 20 C.F.R. §§ 404.1513(d), 416.913(d). Social Security Ruling 06-03p further discusses "other sources" as including both "medical sources who are not acceptable medical sources" and "non-medical

---

[2] The court observes that in this matter, Weddington does not qualify as an acceptable medical source; rather, as a nurse practitioner, her opinion would be evaluated as "other sources." See SSR 06-03p.



sources." Only acceptable medical sources can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose opinions may be entitled to controlling weight. SSR 06-03p. The ALJs are instructed to apply the factors, or their basic principles, for evaluating the opinions of acceptable medical sources, which are listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d), in evaluating the opinions from other sources with the understanding that not every factor may apply. SSR 06-03p. Social Security Ruling 06-03p further explains that consideration of following factors would be appropriate:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
- Any other factors that tend to support or refute the opinion.

Id.

On December 1, 2008, Weddington wrote a letter addressed to "To whom it may concern" in which she noted that Ashmore had been a long-time patient of her and Dr. Jack Durham and opined that Ashmore suffered from pain secondary to fibromyalgia, osteoarthritis in her hands, chronic back pain, chronic neck pain, headaches, and depression. (Tr. 744.) She further opined that Ashmore had been disabled since September 2003 and was not capable of gainful employment. (Id.)

On December 29, 2008, Weddington completed a residual functional capacity assessment in which she noted that Ashmore's primary diagnosis was fibromyalgia, with secondary diagnoses of chronic low back pain, and osteoarthritis of the hands, hips, knees, and elbows. (Tr. 760-66.) Weddington opined that Ashmore could occasionally lift or carry less than 10 pounds; frequently lift



or carry less than 10 pounds; stand and/or walk less than 2 hours in an 8-hour workday; must periodically alternate sitting and standing to relieve pain or discomfort; was limited in her upper and lower extremities in pushing and/or pulling; could never climb, balance, stoop, kneel, crouch, or crawl, and was limited in reaching and handling. (Id.) Dr. Jack Durham signed Weddington's assessment. (Tr. 782.)

The ALJ found that the "rather extreme suggested limitations" in these opinions were contradicted by Dr. Jack Durham and Weddington's own treatment notes, as well as contradicted by other evidence in the record. (Tr. 29.) Specifically, the ALJ noted that when Weddington saw Ashmore on June 19, 2007, her treatment notes observed that Ashmore had full range of motion of all joints without any significant joint abnormalities, good muscle strength and tone of all four extremities, intact cranial nerves, and that a recent EKG showed a normal sinus rhythm. (Tr. 944-45.) Weddington also saw Ashmore on June 10, 2008, after a one-year gap in treatment, at which time she noted that Ashmore's fibromyalgia was fairly well controlled and that she had been on Cymbalta at 90 mg daily. (Tr. 948.) The ALJ also observed that Weddington's notes of November 17, 2008 indicated "questionable osteoarthritis," that Ashmore was in no acute distress, and that she had full range of motion of the shoulders. (Tr. 950.) Additionally, the ALJ pointed to a functional capacity evaluation in July 2004 that indicated Ashmore could perform work at a medium level; medical notes from Dr. Wessinger in January 2005 that found Ashmore had good range of motion and strength and could go back to work "if need be;" medical notes from Dr. Jack Durham in July 2005 that indicated good tone and strength in the major muscle groups, no gross motor or sensory deficits, normal gait, and normal coordination; and medical notes from Dr. Meadows in December 2007 that noted x-rays of Ashmore's pelvis were normal and an x-ray of her right hand showed only



early osteoarthritis at the DIP joints with no other abnormalities. (Tr. 28-29, 301-06, 637, 345, 732-41.) The ALJ also stated that he was "largely in agreement" with the State agency's assessment that found Ashmore could perform medium work. (Tr. 27, 707-14.)

The ALJ noted that, although Weddington is not an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513, Dr. Jack Durham had endorsed Weddington's opinion regarding Ashmore's disabling limitations. Additionally, the ALJ noted that Weddington's opinion that Ashmore was disabled pertains to an administrative finding reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that opinions that a claimant is "disabled" or "unable to work" are reserved to the Commissioner).

The court finds that Ashmore has failed to demonstrate that the ALJ's decision with regard to Nurse Practitioner Weddington and Dr. Jack Durham is unsupported by substantial evidence or controlled by an error of law. Though opinions of treating sources who are not "acceptable medical sources" may be given more weight than the opinions of acceptable medical sources in some circumstances, the ALJ's decision in this case to discount the opinion of the nurse practitioner was supported by substantial evidence. Specifically, the ALJ cited the records and opinions of other treating physicians as well as the nurse practitioner's own prior treatment notes that were inconsistent with Weddington's opinion that Ashmore was disabled. The court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are comfortably within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and



resolve conflicts of evidence). Although Ashmore may point to selective records that may support these opinions, they do not render the ALJ's decision unsupported. Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); see also Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence); Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

**B.     Onset Date**

Ashmore also argues that the ALJ erred in failing to consider whether Ashmore was disabled at a later onset date. Specifically, Ashmore argues that the ALJ's evaluation of Ashmore's claim focused "almost entirely" on the time period prior to June 2007, when Ashmore alleges her condition worsened and when she was diagnosed with fibromyalgia.

As stated above, Ashmore filed her application alleging disability since September 13, 2003. The ALJ's opinion clearly states that he found Ashmore was not under a disability from September 13, 2003 through the date of his decision on March 24, 2009. (Tr. 31.) Further, the ALJ's opinion



is replete with citations and discussion regarding medical records subsequent to June 2007.  (See, e.g., Tr. 23-25, 29-30.)  Accordingly, Ashmore's argument is without merit.

C.     Other Issues

To the extent that Ashmore raises arguments for the first time in her reply brief, these arguments are not properly before the court.  Moreover, even if the court were to consider them, Ashmore's arguments with regard to the Appeals Council decision would fail.  See Meyer v. Astrue, 662 F.3d 700, 702 (4th Cir. 2011) (holding that "[t]he Appeals Council need not explain its reasoning when denying review of an ALJ decision.").  Additionally, Ashmore's argument regarding Social Security Ruling 12-2p must also fail, as the effective date of its publication was subsequent to the ALJ's opinion in this matter.

## RECOMMENDATION

For the foregoing reasons, the court finds that Ashmore has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 18, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).